UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JEFFREY GAUL AND PAULA GAUL,

        Plaintiffs,

     v.                                1:13-cv-433

CHRYSLER FINANCIAL SERVICES
AMERICAS, LLC, *et al.*,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Presently before the Court is the motion by Defendant Equifax, Inc., to Dismiss

the Case and Enforce Settlement, Dkt. #56, in this case involving Plaintiffs' claims that

various Defendants violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq.,

and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., by reporting

derogatory and inaccurate information about Plaintiffs' credit history to third parties.

Defendant Equifax, Inc., alleges that the parties agreed to settle the case and request

an order from the Court directing the Plaintiffs to comply with that agreement.  In

conjunction with that motion, Defendant also moves that the case against Equifax, Inc.,

be dismissed.  The parties have briefed the issue and the matter is ripe for

determination.

## I.      BACKGROUND

In this case, Plaintiffs, proceeding *pro se*, seek damages from the Defendants for

their allegedly false reports to third parties about Plaintiffs' credit history. The Plaintiffs

sued a number of entities involved with consumer loans, including car lenders, auto

finance agencies, and credit reporting services. See Cmplt., Dkt. #1-2, at ¶¶ 5-6.

Among the Defendants was Equifax, Inc., which Plaintiffs alleged had filed "derogatory

and inaccurate statements" about their credit history. Id. at ¶ 9. Equifax allegedly

furnished this inaccurate information in consumer credit reports to various entities,

despite Plaintiffs' protests, and Plaintiffs suffered damages as a result. Id. at ¶¶ 12-21.

Plaintiffs therefore filed claims against Defendant Equifax and other credit reporting

agencies under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq.

After Defendant Trans Union, LLC removed the case to this Court (See Dkt. #1),

Defendant Equifax, Inc., was served with the Complaint and filed an answer. See Dkt.

#14. Plaintiffs and Defendant engaged in settlement negotiations. According to the

Defendant, the parties reached an agreement to settle the case on October 9, 2013.

See Declaration of Brian J. Olson in Support of Defendant Equifax Inc.'s Motion to

Enforce Settlement and Dismiss, Dkt. 56-2, at ¶ 7. Defendant contends that Equifax,

Inc., agreed to make certain alterations to Plaintiffs' credit reports in exchange for

Plaintiffs' dropping their claims against Equifax. Id. Defendant further alleges that

Plaintiffs understood that no monetary compensation would be paid them as part of the

agreement. Id. at ¶ 8. Defendant avers that on October 24, 2013, Plaintiffs were sent a

copy of a settlement agreement. Id. at ¶ 13. Despite repeated requests, Plaintiffs

never returned the signed settlement agreement or executed any documents that would

have dismissed their claims against Defendant Equifax. Id. at ¶¶ 14-17, 20.

Defendant contends that "Equifax performed its part of the bargain and made several

changes to Plaintiffs' credit files." Id. at ¶ 19.  Plaintiffs deny Defendant's allegations and assert that monetary compensation was always part of any agreement to settle the case.  The parties never made any joint representation to the Court that they had settled the case, nor did they introduce the terms of any settlement agreement to the Court for approval.

After Defendant failed to obtain a copy of the signed settlement agreement and documents releasing Plaintiffs' claims against Equifax, Defendant filed a motion to enforce the alleged settlement and dismiss the case.  See Dkt. #56.  The parties briefed the issues.  Plaintiffs' response contained a motion for the Court to enforce the terms of the settlement that Plaintiffs said applied, as well as a request for sanctions against the Defendant for filing the instant motion.  Defendant responded, bringing the case to its present posture.

## II.    ANALYSIS

For reasons which shall become apparent, the Court will first address the Defendant's position that the parties had a valid settlement agreement which the Court must enforce.

### A.  Defendant's Argument

Defendant offers two basic arguments[1] for enforcing the supposed settlement.

---

[1]In replying to Plaintiffs' brief in opposition, Defendant argues that the Court must reject all of Plaintiffs' factual assertions because Plaintiff did not include a statement of facts in response to Defendant's motion to dismiss, and did not supply counter-affidavits to the one supplied by Defense counsel.   The Court rejects this position. Plaintiffs are proceeding pro se.  Defendant has filed a motion to dismiss, not a motion for summary judgment.  Plaintiffs' filings address the factual basis supplied by the Defendant with sufficient detail for the Court to make a determination.

The Court will address each in turn.

### i.     The Parties formed an Enforceable Contract

First, Defendant agues that the parties had an agreement to settle the case that this Court is bound to enforce.  Defendant contends that, because Plaintiffs did not dispute an e-mail from Defense Counsel on October 11, 2013 stating the terms of the alleged settlement, no doubt exists that Plaintiffs "consented to the terms of the settlement and agreed to be bound by them."  Because a "meeting of the minds" existed between the parties, the Court must enforce the settlement.  This argument is essentially a contractual argument; that the parties had an agreement, Plaintiffs breached that agreement, and that the Court must order specific performance.

After asserting that the Court lacks jurisdiction to entertain the motion[2], Plaintiffs respond by disputing the facts alleged by Defendant.  They claim that no agreement to settle the case on the terms urged by the Defendant existed.  They insist that they never agreed to settle the case without monetary compensation.  Indeed, Plaintiffs assert that Plaintiff Paula Gaul never authorized her husband, Plaintiff Jeffrey Gaul, to make an agreement that failed to include money damages.  Plaintiffs assert that they never had any intention to sign the settlement agreement forwarded to them by

---

[2]Plaintiffs contend that Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994), establishes that this Court has no jurisdiction to entertain Defendant's motion.  Plaintiffs are incorrect.  Kokkonen dealt with the question of whether a trial court retained jurisdiction to enforce a settlement after the court entered a stipulated order dismissing all claims.  Id. at 377.  The stipulated order did not specifically retain jurisdiction to enforce the settlement.  Id.  The Court found that the trial court lacked jurisdiction to enforce the settlement, which was essentially a state-court contract matter.  Id. at 381.  The circumstances are obviously different here.  The case is still pending before this Court, and no stipulation to end the matter without retaining jurisdiction to enforce a settlement as been entered into the record.

4

Defense counsel, and they should not be ordered to do so now.  Moreover, only the formal settlement agreement forwarded by Defense counsel could have represented the final settlement agreement, and Plaintiffs have never signed that document.  More important, Plaintiffs argue that, because no formal agreement to settle was ever presented to the Court, there is no basis for the Court to order that the Plaintiffs comply with the settlement terms.[3]

Defendant is surely correct that "[a] district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it."  Mettings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir. 1974).  Defendant has ignored another part of that standard, however:  "[s]ettlements of any claim are generally required to be in writing or, at minimum, made on the record in open court."  Ciaramella v. Reader's Digest Ass'n, 131 F.3d 320, 326 (2d Cir. 1997).  Courts are clear that "[a]n agreement to end a lawsuit is interpreted according to contract principles."  United States v. Sforza, 326 F.3d 107, 124 (2d Cir. 2003).  "Parties may enter into a binding contract orally, and the intention to commit an agreement to writing, standing alone, will not prevent contract formation."  Powell v. Omnicom, 497

_____

[3]Plaintiffs also argue that Defendant's motion is untimely.  That argument is misplaced.  After a telephone conference with the parties on November 26, 2013, Magistrate Judge Randolph F. Treece issued an Order addressing various issues raised by the parties.  See Dkt. #54.  In that Order, issued on November 27, 2013, Magistrate Judge Treece noted that "[c]urrently, there is a dispute between Equifax Defendant and Plaintiffs as to whether these two parties actually entered into a stipulation of settlement."  Id. at 2. Noting that the parties disagreed over whether the stipulation existed, the Court directed Defendant "to file a dispositive motion within thirty days of the filing date of this Order."  Id.  Defendant filed the motion to dismiss and enforce settlement on December 27, 2013.  See Dkt. #56.  The motion was filed timely according to the Magistrate Judge Treece's Order.

F.3d 124, 129 (2d Cir. 2007).  Thus, "a 'voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record is enforceable even if the agreement is never reduced to writing, signed or filed.'" Id. (quoting Role v. Eureka Lodge No. 434 I.A. of M & A.W. AFL-CIO, 402 F.3d 314, 318 (2d Cir. 2005)); see also, Pierre v. Chase Inv. Servs. Corp., No. 13-1398-cv, 2014 U.S. App. LEXIS 6315, * 2 (2d Cir. Apr. 3, 2014) ("Announcing the terms of a settlement agreement on the record in open court memorializes critical litigation events, and serves a 'cautionary function' ensuring the parties' acceptance is deliberate.").  Such a settlement "remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms are reduced to writing."  Id.  In Omnicom, the parties stated the clear terms of their settlement for the record "in open court," and each side affirmed that the terms were the ones to which they agreed.  Id. Under those circumstances, "the fact that the settlement was never reduced to writing is insufficient to render the settlement nonbinding."  Id.

Defendant's position is that the parties came to an oral agreement to settle the case and Plaintiffs now seek to back out of that agreement.  Defendant admits, however, that Plaintiffs never signed the settlement agreement sent them, despite promises to do so. There was also no presentation of the settlement agreement to the Court.  The only time the terms of the agreement have been presented to the Court is in an exhibit to the Defendant's motion.  That agreement was never signed, despite as many as 19 contacts between Defense counsel and Plaintiffs.

The problem with Defendant's position is that, unlike the cases Defendant cites, no agreement has ever been presented by *both parties* to the Court indicating that the

parties have actually settled the case. Thus, while there may have been an oral agreement between the parties laying out terms for a possible settlement, those terms were never formally presented to any Court. In essence, Defendant attempts to skip that step and have the Court enforce an agreement to which the Plaintiffs object. This is not a case where the Plaintiffs, on the record, agreed to the settlement and then went home, thought the matter over, and tried to back out. Instead, what happened in this case occurs in many legal disputes: the parties thought they had an agreement, but one side backed out before the agreement could be finalized. Case law on whether the Court can enforce an agreement never placed on the record before the Court is therefore inapplicable.

Instead, the Court is constrained to conclude that, in the absence of an agreement entered into the record by both parties–either orally or in writing–the Court lacks an agreement to enforce. See, e.g., Kaczmarcysk v. Dutton, 414 Fed. Appx. 354, 355-56 (2d Cir. 2011) (finding that a settlement agreement was not binding until the writing memorializing that agreement was actually signed); Aguiar v. New York, 356 Fed. Appx. 523, 525 (2d Cir. 2009) (finding that a valid oral agreement to settle the case had been reached because the "on-the-record recitation" established the terms of the agreement and the parties' understanding of those terms); Copp v. Connecticut, 310 Fed. Appx. 436, 437 (2d Cir. 2009) (enforcing settlement agreement arrived at orally before the court); Jackson v. Heidelberg, L.L.C., 296 Fed. Appx. 102, 103 (2d Cir. 2008) ("A settlement stipulated to by the parties in open court is binding even if a party has a 'change of heart' between the date of the stipulated agreement and when the agreement is reduced to writing"). Defendant's motion must be denied.

Defendant cites to a number of cases that establish the principle that "[w]hen a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect." United States v. Bank of New York, 14 F.3d 756, 759 (2d Cir. 1994); see also, Little v. Greyhound Lines, Inc., No. 04 Civ. 6735, 2005 WL 2429437, *2 (S.D.N.Y. Sept. 30, 2005) (enforcing settlement when parties signed settlement documents after court-referred mediation); Hunt v. Fuksman, 189 F.3d 461 (2d Cir. 1999) (enforcing oral settlement agreement).[4] The cases cited by the Defendant certainly stand for that general proposition, but the facts of this case fail to establish the basic factual predicate that animates those cases: the parties agreed to settle the case and affirmed that agreement on the record. After the Court considered the settlement as completed, one party subsequently sought to avoid that agreement. That did not happen in this case.

Willgerodt ex rel. Majority People's Fund for the 21st Century, Inc. v. Hohri, 953 F.Supp. 557 (S.D.N.Y.), cited by the Defendant, is particularly instructive in this respect. In Willgerodt, a Magistrate Judge conducted a settlement conference at which the parties agreed to terms, discussed them with the Judge, and then exchanged documents. Id. at 559. When the defendant saw the proposed agreement, she objected, claiming that the terms in the written document were not the ones she agreed to. Id. The Magistrate Judge held another settlement conference, and the parties

---

[4]Defendant cites to this summary order for the proposition that an "oral settlement agreement is enforceable, even if a party later decides it was not advantageous." Defendant makes more of this case than is possible given the Court's opinion. The summary order does not explain any of the facts of the case, and does not establish whether the oral agreement was made before the court or in some other setting. The case therefore does not offer substantial support for Defendant's position.

again agreed to terms.  Id.  The parties discussed a new draft agreement, and the

Magistrate Judge asked the defendant: "'So you can represent to me here on the

record that if everything we've discussed is done in this agreement, as we've discussed

ti today, we have this case settled and you hereby say yes, you settle this case?'" Id.

The defendant agreed, and the Magistrate Judge then warned her explicitly that, having

agreed before the Court to settle the case on particular terms, "'there is a provision in

the law that says having said that here, in court, in front of me, you are bound to it.  You

can't change your mind[.]'" Id.

    The Court in Willgerodt enforced the oral settlement agreement.  Id. at 561.  As

a preliminary matter, the Court noted that "[i]t is essentially undisputed that the parties

reached an oral agreement to settle this case at the conference before [the] Magistrate

Judge."  Id. at 559.  The transcript of the proceeding before the Magistrate Judge

directly contradicted the defendant's claim that she had not believed the settlement to

be binding on her.  The Court noted that New York law established that "an oral

settlement agreement is binding only if it is made in 'open court.'"[5] Id. at 560 (citing N.Y.

C.P.L.R. 2104; Dolgin v. Dolgin (In re Dolgin Eldert Corp.), 31 N.Y.2d 1, 8-10, 334

N.Y.S.2d 833, 838-40, 286 N.E.2d 228 (1972) and Monaghan v. SZS 33 Associates,

L.P., 73 F.3d 1276, 1284 (2d Cir. 1996)).  Citing case law to establish that

"[a]fterthought or change of mind are not sufficient to justify rejecting a settlement," the

court held that it could "relieve a party of the consequences of a settlement agreement

_____

        [5]The Court noted that, though "Federal law probably governs" whether a
settlement agreement can be enforced, "'the federal rule regarding oral stipulations
does not differ significantly from the New York rule.'"  Willgerodt, 953 F.Supp. at 560 n.1
(quoting Monaghan v. SZS 33 Associates, L.P., 73 F.3d 1276, 1283 n.3 (2d Cir. 1996)).

'only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident[.]'" Id. (quoting Rivera v. State, 115 A.D.2d 431, 432, 496 N.Y.S.2d 230, 231 (1st Dep't 1985)).  Finding no evidence of such intimidation, coercion or other duress, the court enforced the settlement made orally before the Magistrate Judge.  Id. at 561.

The situation is not the same in this case.  The parties dispute whether they ever reached a settlement, and no such agreement was ever presented even orally before any tribunal.  The Plaintiffs have never affirmed, either orally or in writing, that they accept the terms of a settlement.  Instead, Defendant presents evidence of the negotiations that were intended to lead to the settlement and the documents that Plaintiffs were supposed to sign as part of the agreement to settle the case.  That set of facts bears little relation to the set of facts in Willgerodt.  There has been no presentation to any court or other tribunal of a valid settlement agreement to which both parties have provided open assent, and thus there is no settlement agreement which the Court would be compelled to enforce as the Court was in Willgerodt.

In short, the Court cannot enforce a settlement agreement when there is no evidence that the settlement was ever concluded.  Defendant asks the Court to validate a settlement agreement that was never formally executed by the parties and enforce that agreement against a party that has never affirmed the agreement before the Court. The weight of authority in this Circuit does not permit such an outcome.  The Defendant's motion to enforce settlement is therefore denied.

The parties' briefing raises the issue of whether a settlement agreement ever actually existed between the parties, regardless of whether the parties ever presented

that agreement on the record. Defendant attempts to offer evidence that an oral agreement to settle the case was reached, and apparently that Plaintiffs have breached this agreement. In their response to Defendant's motion, Plaintiffs contend that precedent in this Circuit requires the Court to find that no valid agreement to settle the case even existed. Defendant responds by pointing out that no written agreement is necessary to find a valid contract to settle a legal dispute, and that the alleged agreement between the parties meets the requirements for such a finding. The Plaintiffs again have the better argument.

The Courts have set out a standard for determining whether a valid settlement agreement exists. "A trial court has inherent power to enforce summarily a settlement agreement when the terms of the agreement are 'clear and unambiguous'." Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437, 444 (2d Cir. 2005) (quoting Audobon Parking Assocs. Ltd. P'Ship v. Barclay & Stubbs, Inc., 225 Conn. 804, 711 626 A.2d 729, 733 (1993)[6]). "Such power is 'especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings." Id. (quoting Janus Films, Inc. v. Miller, 801 F.2d 578, 583 (2d Cir. 1986)). Here, there is no dispute that a signed settlement agreement was never executed; Defendant simply argues that the agreement was oral. The Second Circuit Court of Appeals points to "four factors to guide the inquiry regarding whether parties intended to be bound by a settlement agreement in the absence of a document executed by both sides." Ciaramella, 131

---

[6]The Court in Omega found that under Connecticut law settlement agreements should be interpreted according to contract law. 432 F.3d at 443. Moreover, "[a]lthough our cases have stated this rule as it arises under New York law, Connecticut's law is the same." Id.

F.3d at 323.  A court considers:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.  No single factor is decision, but each provides significant guidance.

Id. at 323.  Moreover, "complexity of the underlying agreement is an indication of whether the parties reasonably could have expected to bind themselves orally."  Id. at 326.

As to the first factor, the Court finds that no final agreement to settle the claims existed, and that the parties clearly intended to complete the agreement only with the execution of a signed release.  The proposed settlement agreement sent by Defendant makes clear that the parties did not consider the agreement complete until the agreement was signed by the Plaintiffs and returned to the Defendant.  Defendant's consideration for the agreement was Plaintiffs' promise to release any claims against Defendant.  The proposed agreement provides that "Within five days of execution of this Agreement, Plaintiffs agree to file a Motion to Dismiss with Prejudice, and Proposed Order, or to file such other papers as are necessary to dismiss with prejudice his claims against Defendant."  (Exh. A-3 to Declaration of Brian J. Olson ("Olson Dec."), Dkt. #56-2, at ¶ 1).  In addition, Plaintiffs agreed to provide Defendant's attorneys with copies of such papers.  The language of the agreement, then, indicates that Plaintiffs were to provide their consideration for the agreement *after* they returned a signed copy of the agreement paper to the Defendant.  If the agreement had been an oral agreement for the altering of credit reports in exchange for the release of claims,

no written agreement would likely have been necessary.

In addition, Defendant insists that the value that Plaintiffs received for releasing their claims came in the form of changes to their credit reports Defendant agreed to provide.  Defendant insists that it rendered great value to the Plaintiffs by providing such documents.  Plaintiffs' complaint centered on the damage that allegedly false reports could do to their credit prospects.   Plaintiffs would therefore understandably want to examine the credit reports before agreeing to release their claims, especially if–as Defendant contends–they had agreed to forego any cash payments for their troubles.  The proposed agreement contains the provision that "*by signing this Agreement*, the Plaintiffs certify that the Equifax consumer disclosures, dated October 16, 2013, and attached hereto as Exhibit "A" are true and accurate as of the date printed and complete in all material respects, and that Equifax may publish the information obtained therein in its normal course of business[.]" (Id. at ¶ 6) (emphasis added).  These credit reports were at the heart of the parties' dispute, and the presence of the requirement that Plaintiffs acknowledge the accuracy of the revised reports by signing the document indicates that the written agreement was not mere surplusage.  The written agreement was an essential component of any alleged settlement.  The Plaintiffs have never signed that proposed agreement, and thus have not agreed to one of the essential terms.

Related to this is the Defendant's claim as to the second factor–that Equifax performed its obligation under the contract by providing corrected credit reports.  Equifax insists that such reports were provided, though none were provided to the Court and the reports referenced in the proposed agreement were to be dated *after* the date

the agreement was written.[7]   In any case, as explained by the language of the

supposed agreement that gives Plaintiffs the right to review the documents supposed

revised by the Defendant, Defendant's supposed performance in providing these

updated accounts does not require the performance of the Plaintiffs under the

agreement.  Paragraph 6 permits the Plaintiffs to reject the documents as less than

"accurate as of the date printed and" not "complete in all material respects."  Id.  Only

after making this confirmation and signing the agreement were Plaintiffs required to

abandon "any action against Equifax based on information currently reported in the

Equifax credit file[.]" Id.

As to the third factor, there is clearly a dispute about whether all of the terms of

the proposed contract have been agreed to.  While Defendant insists that the only

consideration Equifax provided was an alteration of the credit reports, Plaintiffs counter

that the parties continued to discuss a financial settlement as well as an administrative

one.  They allege that they never would have agreed to settle the matter without a cash

payment.  Plaintiffs' position is bolstered by the fact that they have never signed the

agreement proposed by the Defendant.  That agreement contains no monetary

damages.  Moreover, even if the Court were to accept that the alleged oral agreement

consisted only of the terms offered in the proposed written agreement, the Court has

already concluded that the written proposal contains terms–acceptance of the revised

---

[7]The proposed agreement is dated October 11, 2013. (See Exh. A-3 to Olson
Dec.).  The updated "consumer disclosures" referenced by the Defendant are listed in
the agreement as dated October 16, 2013.  See Id. at ¶ 6.  Defendant makes no
attempt to explain how the proposed settlement could contain documents dated in the
future.

credit reports–that have never been accepted by the Plaintiffs. They were required to sign the document to accept them.

As to the fourth factor, the Court finds that the type of document here involved, the release of legal claims against one party in exchange for some valuable consideration, is the type of agreement normally committed to writing. The Defendant's own behavior in this matter demonstrates that a writing is the usual method for dealing with the release of legal claims. Defendant sought to have Plaintiffs sign a settlement agreement that laid out the terms of the release, the nature of the release, and the types of claims covered by the release. The reason for putting such terms in writing is clear: the Defendant would have a document to which it can point if the Plaintiffs attempt to bring claims that were previously released, and that document would be the best evidence for dismissing the claims. Indeed, the cases cited in this opinion demonstrate that even when a settlement is agreed to orally, the parties usually craft a settlement agreement in writing that confirms the terms of the settlement. Finally, the Court is well-aware that agreements to settle lawsuits are generally in writing.

Thus, the four factors for determining whether parties intended to be bound by an oral agreement all weigh in favor of finding that there was no such binding agreement in this matter. The behavior of the partiess and the agreement proposed by the Defendant all indicate that no binding oral agreement to settle the case had been created by the parties.

Forden v. Bristol Meyers Squibb, 63 Fed. Appx. 14, 16 (2d Cir. 2003), is especially useful under these circumstances. In Forden, the parties had advised the trial court that they had reached a settlement on the day trial was to begin. Id. at 16.

15

The parties read the settlement terms into the record, and defense counsel told the court that "he would prepare a written settlement agreement consistent with the terms read into the record" and provide plaintiff's counsel with a copy. Id. "Subsequent attempts to agree on terms of the written agreement failed, however," because plaintiff's counsel disagreed as to exactly which claims were subject to the release. Id. The court denied a motion to enforce the settlement, "concluding that since there, in fact, had been no agreement on a material term–i.e. the release–no enforceable settlement had been reached." Id. The Court of Appeals determined that the trial court correctly applied the factors in Ciaramella and made no error in determining that the parties "failed to agree on a material term of the contract." Id. Thus, "no binding settlement agreement existed." Id.

The situation is similar here, though the parties never reported together to the Court that the case had settled. As in Fordern, however, there is evidence that the parties may have worked out some preliminary agreement to settle the case. When they attempted to put those terms in writing, though, their efforts failed. One side would not agree to the written terms offered by the other side. As in Fodern, whatever "agreement," the parties attempted to reach over Plaintiffs' claims could not be reduced to writing. The Court must therefore find that no agreement to settle the case was ever reached between Plaintiffs and the moving Defendant, and deny the motion on these grounds.

Defendant argues that e-mails produced by Equifax as part of its motion to enforce the settlement provide "irrefutable proof that the parties intended to be bound by the agreement." Defendant refers to two e-mails dated October 11, 2013. In the

16

first, Defense Counsel e-mailed Jeffery Gaul, stating that "I am happy that we have been able to resolve this matter as to Equifax. I will send you a settlement agreement and consumer disclosures (with your scores). I will also send you the dimissal and will be glad to file it for you once you have reviewed it." (Exh. A-1 to Declaration of Brian J. Olson, Dkt. #56-2). Plaintiff Jeffrey Gaul responded by stating, "[t]hanks for explaining today that your client is willing to, and now has, consider [sic] the facts, including the credit reporting–the alleged repossession, $8749.00 charge-off, et cetera) as a basis for settling this matter today." (Exh. A-2 to Declaration of Brian J. Olson, Dkt. #56-2). Plaintiff expressed "disappointment" with Equifax's inability to "reinsert the positive reporting that they removed," but wrote that he understood Equifax's position. Id. "In any event," Plaintiff concluded, "thank you for promising to have the negative information deleted today and to provide a current disclosure today reflecting the same, in addition to providing today the settlement papers."

This correspondence does not reflect a clear agreement to settle binding on both parties. Nowhere do Plaintiffs promise to sign the settlement agreement, and nowhere does Mr. Gaul even discuss the terms contained in the settlement. He simply discusses the negotiations concerning credit reports. It is clear that Plaintiffs had not yet reviewed the settlement papers and acceded to their terms when Mr. Gaul sent his e-mail response. The Court cannot read these documents to establish that the parties had a clear agreement to settle and that the paper containing those terms was a mere formality. Defendant drafted the proposed settlement, and the Defendant does not offer any evidence that Plaintiffs ever saw the proposed agreement before Defendant e-mailed it. Nothing in Mr. Gaul's response indicates that he accepted the terms of the

settlement agreement, or that he had even examined those terms.

Moreover, Defendant admits that Equifax repeatedly requested that Plaintiffs sign and return the agreement.  Plaintiffs never did so,  and assert that they have never had any intention of doing so unless they receive monetary compensation for settling the claims in their case.   That behavior, combined with their continued denial that they ever intended to sign the agreement, demonstrates that the parties did not reach any sort of a binding oral agreement to settle Plaintiffs' claims.  The Court must therefore deny the motion on these grounds.

### ii.    Defendant Performed on the Contract and Equity Requires Specific Performance by the Plaintiffs

As a second ground for requiring Plaintiffs to sign the proposed settlement agreement, Defendant argues that Equifax, Inc., updated Plaintiffs' credit files and Plaintiffs are therefore required to accept settlement of the case.  Defendant argues that it performed on its part of the bargain, and Plaintiffs must as well.  Implying an equitable obligation on Plaintiffs' part, Defendant asserts that Defendant had no legal obligation to perform this action.  Even if Plaintiffs had prevailed on their claims, the Court could not have ordered Equifax to change the data in the Plaintiffs' credit files.  Because Equifax performed an action that could not have been won in a lawsuit and thus gave up a valuable consideration, Defendant asserts, the Court must enforce Plaintiffs' alleged obligation pursuant to the supposed settlement agreement.

The Court has already explained why this alleged furnishing of updated credit reports does not constitute performance by the Defendant sufficient to compel the Plaintiffs to sign the agreement and release any claims against the Defendant.  There is

certainly no reason to think that Defendant's action is irrevocable, or that Defendant provided Plaintiff with any property that would compel them to either return that property or be ordered to perform under the alleged contract. If the Defendant feels that Plaintiffs breached their agreement, then Defendant can likely alter the credit reports to indicate changed circumstances.

Defendant is essentially arguing for specific performance of the Plaintiffs' obligations under the alleged contract. To obtain specific performance on a contract, a party must prove "that (1) a valid contract exists between the parties; (2) the plaintiff has substantially performed its part of the contract, and (3) plaintiff and defendant are each able to continue performing their parts of the agreement." Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp., 922 F.2d 430, 433 (2d Cir. 1993). To obtain such relief, the applicant "must show equitable factors in its favor, for example, the lack of an adequate remedy at law, and must also demonstrate that its risk of injury . . . is one that after balancing the equities entitles it to relief." Id. As explained above, Defendant cannot meet the first two of these elements, and thus specific performance cannot be required. The parties did not have a binding agreement, and thus the equitable remedy of specific performance is unavailable.

In the end, the Defendant's motion to dismiss and enforce settlement must be denied for the simple reason that the parties never entered into a binding agreement that could be enforced. They also failed to enter that agreement into the record. The motion will therefore be denied. Because the parties could enter into an agreement that the Court would be compelled to enforce, however, the motion will be denied without prejudice to Defendant raising the issue again at an appropriate time.

**B.      Additional Relief Sought by Plaintiffs**

Plaintiffs' brief in opposition to Defendant's motion to dismiss and enforce settlement also argued for additional relief.  Plaintiffs seek sanctions against the Defendant for filing the instant motion, as well as an order from the Court directing Defendant to pay Plaintiffs specific amounts and take certain actions to settle the case.

### i.  Plaintiffs' Demand for Sanctions

Plaintiffs seek sanctions against the Defendant for bringing the instant motion. Plaintiffs insist that the Defendant has misrepresented the facts and falsely claimed the Plaintiffs agreed to settle the case.  Plaintiffs contend that filing a motion to dismiss and enforce settlement was, under the circumstances, an abuse of process.  Plaintiffs seek the cost of defending the motion.  Defendant, Plaintiffs allege, was well-aware that it could not prevail on the motion.  Plaintiffs also aver that Defense Counsel has engaged in abusive and threatening conduct during negotiations regarding settlement in this case.  Plaintiffs allege that Defendant has continued to report improper credit scores for the Plaintiffs when faced with inquiries from Plaintiffs' potential creditors.

Plaintiffs seek sanctions for Defendant's misconduct related to the filing of a motion to dismiss which Plaintiffs claim obviously had no merit.  Under Rule 11 of the Federal Rules of Civil Procedure, the Court may impose sanctions against an attorney or a party who files a pleading for an improper reason, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," or when there is no legitimate legal basis to support that motion.  FED. R. CIV. P. 11(c).  Rule 11 sanctions are available against a party for filing a motion "when 'it is clear . . . that there is no chance of success.'"  <u>International Telepassport Corp. v. USFI, Inc.</u>, 89 F.3d 82, 86 (2d

20

Cir. 1996) (quoting Shafi v. British Airways PLC, 83 F.3d 566, 570 (2d Cir. 1996)).

Federal law also provides that "[a]ny attorney or other person admitted to conduct

cases in any court of the United States or any Territory thereof who so multiplies the

proceedings in any case unreasonably and vexatiously may be required by the court to

satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred

because of such conduct."  28 U.S.C. § 1927.  The Court may impose sanctions "'only

when there is a finding of conduct constituting or akin to bad faith.'" 60 E. 80th St.

Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities, Inc. Bankruptcy Lit., 218 F.3d 109,

114 (2d Cir. 2000) (quoting Sakon v. Andreo, 119 F.3d 109, 114 (2d Cir. 1997)).

Sanctions under Section 1927 are only "'proper when the attorney's actions are so

completely without merit as to require the conclusion that they must have been

undertaken for some improper purpose such as delay.'" Id. (quoting United States v.

International Bhd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991)).

The Plaintiffs' motion for sanctions will be denied.  While the Court concludes

that Defendant is incorrect to claim that the alleged agreement must be enforced, the

Court also finds that the motion was brought pursuant to a legitimate factual and legal

basis.  As the Court has explained, there is a legitimate factual dispute about the

parties' negotiations and alleged agreement to settle the case.  Indeed, Plaintiffs claim

that there may have been an agreement to settle that included monetary terms.

Similarly, reporting credit scores was not improper, especially since Plaintiffs insist that

there was no final agreement in place that would require Defendant to either alter

Plaintiffs' credit reports or restrain from making such reports.  Defendants did not abuse

the process in this instance, but simply sought to have the Court intervene and end a

case that Defendant had attempted to settle. The Court will therefore deny the motion for sanctions.

### ii. Plaintiffs' Demand for Settlement

Plaintiffs next argue that the facts of the case indicate that the parties actually had an agreement to settle the case for a payment of $3,150 to each of the Plaintiffs, as well as other relief not specified clearly. That requested relief appears to be related to the Plaintiffs' credit scores, which Plaintiffs contend do not reflect accurately the levels to which Defendant Equifax promised to adjust them. Defendant denies that the alleged settlement agreement contained any promise of cash payment to the Plaintiffs. Defendant argues that the Plaintiffs agreed to drop their case against Equifax in exchange for adjustments to their credit scores.

As explained above, the Court has found that no agreement existed between the parties. Plaintiffs' argument only underscores that fact. The terms of the agreement never reached a final conclusion, and the Court will not enforce an agreement that was never presented to the Court and never agreed to by the parties. The Plaintiff's motion for such relief is denied.

## III. CONCLUSION

For the reasons stated above, Defendant Equifax, Inc.'s motion to dismiss and enforce settlement is DENIED. The Plaintiffs' motion for sanctions and to enforce settlement, as stated in their brief in opposition to Defendant's motion, is also DENIED.


IT IS SO ORDERED

Dated: April 14,214

Thomas J. McAvoy
Senior, U.S. District Judge