# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

JEFFREY AND PAULA GAUL,

Plaintiffs,

- v -

Civ. No. 1:13-CV-433
(TJM/RFT)

CHRYSLER FINANCIAL SERVICES
AMERICAS LLC, *et al.*,

Defendants.

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER

Presently before this Court is *pro se* Plaintiffs' Omnibus Motion seeking various relief. Dkt. No. 59, Pls.' Mot., dated Jan 9, 2014. The best the Court can discern, Plaintiffs seek (1) to join another party to this litigation, (2) to compel Defendant Equifax to serve responses to Plaintiffs' Request for Admission, (3) to compel Defendant Deily, Mooney & Glastetter LLP (hereinafter DMG) to comply with Plaintiffs' Discovery Demands, (4) from the Court, to provide detailed instructions on how to survive a motion for summary judgment, and (5) permission to file electronically. The only Defendant to respond to this Omnibus Motion is DMG. Dkt. No. 61, Richard Maider Esq., Affirm., dated Jan. 14, 2014.[1] Previously,

---

[1] By a Decision and Order, dated July 23, 2013, Dkt. No. 32, the Honorable Thomas J. McAvoy, Senior United States District Judge, granted the Chrysler Financial Services Defendants' motion to dismiss, finding a valid arbitration agreement between the parties and directing that the matter be submitted to arbitration. Accordingly, those Defendants need not respond to Plaintiffs'

(continued...)

DMG sought a court conference in order to compel Plaintiffs to respond to DMG's

Demands for Production, Interrogatories, and Request for Admissions. *See* Dkt. No.

55. DMG's Requests will be considered within this Memorandum-Decision and

Order. *See* Dkt. No. 71, Text Order, dated April 10, 2014.

## I. Plaintiffs' Motion to Amend their Complaint to Join a Party

In their Memorandum of Law, Plaintiffs claim that CBC Company, d/b/a

Innovis, is a credit reporting agency that may have reported "false and harmful

information" about them, *i.e.*, that Plaintiffs defaulted on an auto lease. Dkt. No. 59-1,

Pls.' Mem. of Law at pp. 2-3. Accompanying the Memorandum of Law is a proposed

summons and verified complaint. *See* Dkt. Nos. 59-2, Ex. C.

FED. R. CIV. P. 15(a) states, in pertinent part, that leave to amend a pleading

should be "freely given when justice so requires." *Tocker v. Philip Morris Co., Inc.*,

470 F.3d 481, 491 (2d Cir. 2006); *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003);

*Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993). Indeed, leave to amend

should be denied only in the face of undue delay, bad faith, undue prejudice to the

---

[1](...continued)
Motion. Plaintiffs' effort to stay arbitration likewise was denied. Dkt. No. 64, Order, dated Feb. 5, 2014.

In terms of Defendant Equifax, a Motion to Enforce Settlement and Dismiss was pending. Dkt. No. 56. Ostensibly, for that reason, Equifax did not respond. However, on April 14, 2014, the Honorable Thomas J. McAvoy, Senior United States Judge, issued a Decision and Order, denying Equifax's Motion. *See infra* Part II.

non-movant, futility of amendment, or where the movant has repeatedly failed to cure deficiencies in previous amendments. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Kropelnicki v. Siegel*, 290 F.3d 118, 130 (2d Cir. 2002) (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271-72 (2d Cir. 1996)). District courts are vested with broad discretion to grant a party leave to amend the pleadings. *SCS Commc'n, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 345 (2d Cir. 2004) (citing *Foman v. Davis*, 371 U.S. at 182, for the proposition that an "outright refusal to grant the leave without any justifying reason . . . is not an exercise of discretion [but] . . . merely [an] abuse of that discretion and inconsistent with the spirit of the Federal Rules"); *see also Local 802, Assoc. Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998). "The party opposing a motion for leave to amend has the burden of establishing that granting such leave would be unduly prejudicial." *Media Alliance, Inc. v. Mirch*, 2010 WL 2557450, at *2 (N.D.N.Y. June 24, 2010) (quoting *New York v. Panex Indus., Inc.*, 1997 WL 128369, at *2 (W.D.N.Y. Mar. 14, 1997)); *see also Lamont v. Frank Soup Bowl*, 2000 WL 1877043, at *2 (S.D.N.Y. Dec. 27, 2000) (citations omitted). This requires the non-movant to "do more than simply claim to be prejudiced." *Breyette v. Amedore*, 205 F.R.D. 416, 417 (N.D.N.Y. 2002) (quoting *Bryn Mawr Hosp. v. Coatesville Elec. Supply Co.*, 776 F. Supp. 181, 185 (E.D. Pa. 1991)).

As noted above, Rule 15(a) of the Federal Rules of Civil Procedure generally governs the amendment of complaints, but in the case of proposed amendments where new defendants are to be added, the Court must also look to Rules 18 - 20 and 21. *United States v. Commercial Bank of North America*, 31 F.R.D 133, 135 (S.D.N.Y. 1962) (finding that Rule 21 governs when Rules 18, 19, and/or 20 are involved); *Ward v. LeClaire*, 2008 WL 182206, at *3 (N.D.N.Y. Sept. 26, 2007) (citing *United States v. Chilstead Building Co.*, No. 96-CV-0641 (N.D.N.Y. Nov. 7, 1997) (McAvoy, C.J.) (citations omitted)). Rule 21 states that a party may be added to an action "at any time [and] on just terms." FED. R. CIV. P. 21.[2] Rule 21 is "intended to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable." *Phillips v. Lavalley*, 2013 WL 1681422, at *5 (N.D.N.Y. Mar. 1, 2013) (quoting *United States v. Commercial Bank of North America*, 31 F.R.D. at 135 ). The

---

[2] "Rule 21 cannot be read alone but must be read in the light of Rules 18, 19 and 20[.]" *United States v. Commercial Bank of North America*, 31 F.R.D. 133, 135 (S.D.N.Y. 1962). Although Plaintiffs only raise Federal Rule 19, actually both Rules 19 and 20 are applicable. With respect to Rule 19, it states, in part, that "[a] person . . . must be joined as a party if . . . in the person's absence complete relief cannot be accorded among those already parties." FED. R. CIV. P. 19(a)(1)(A). While, Rule 20 states, in part, that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action. FED. R. CIV. P. 20(a)(2). Rule 20(a)(2) is liberally construed "so as to promote judicial economy and to allow related claims to be tried within a single proceeding." *Equal Employment Opportunity Commission v. Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d 505, 508-09 (W.D.N.Y. 2007) (citing, *inter alia*, *Barr Rubber Prods. Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1127 (2d Cir. 1970)).

addition of parties under Rule 21 is guided by the same liberal standard as a motion to amend under Rule 15. *See Ward v. LeClaire*, 2008 WL 182206, at \*3; *Varela v. Cnty. of Rensselaer*, 2012 WL 1355212, at \*7 (N.D.N.Y. Apr. 18, 2012) (quoting *Fair Housing Dev. Fund Corp. v. Burke*, 55 F.R.D. 414, 419 (E.D.N.Y. 1972)).

The appropriate review standard is a motion to dismiss pursuant to Rule 12(b)(6). On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Twombly*). In that respect, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal* at 678 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 680.

Plaintiffs' proposed complaint is deficient. In order to meet the Rule 12(b)(6) standard, there must be "enough facts to state a claim to relief that is plausible on its face." Although the captions included in the proposed summons and verified complaint list CBC Company Inc., d/b/a Innovis, CBC Company is not identified as a party within the proposed amended complaint nor are there factual allegations against this specific reporting agency. At best, this proposed amended complaint repeats verbatim the contents of the original Complaint without expounding any facts relative to CBC Company. *See* Dkt. No. 1, Compl. In fact, the proposed amended

complaint identifies only the three original credit bureau Defendants -- Trans Union, Experion, and Equifax. *See id.* at ¶ 36. Adding Innovis to the headers does not cure the factual insufficiency and employing the term Credit Bureaus does not meet the *Iqbal* standard or state a cause of action against CBC Company. It would be improper for the Court to assume from what has been presented that the Plaintiffs can prove any facts against CBC Company. Even if the Court was to adopt Plaintiffs' Memorandum of Law's conclusory statement that "Innovis knowingly reported false and harmful information," such would not suffice to advance this purported claim from conceivable to plausible. Accordingly, Plaintiffs' Motion to Join CBC Company is denied without prejudice.[3]

## II. Motion to Compel Discovery from Equifax

Plaintiffs argue that Equifax has refused to provide any responses to Plaintiffs' Discovery Demands, which included Notices to Admit. Pls.' Mem. of Law at p. 1. It appears that two sets of Combined Demands may have been served upon Equifax. *See* Dkt. No. 59-2, Exs. at pp. 25-31, Demands, dated Oct. 9 & 14, 2013. Because

---

[3] Plaintiffs erroneously cite two Second Circuit cases for the proposition that "courts have long held that a joinder is a right." Pls.' Mem. of Law at p. 3 (citing *Master Card Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006) & *Arkwright-Boston Manuf. Mutual Ins. Co., v. City of New York*, 762 F.2d 205, 208 (2d Cir. 1985)). Neither cited case stands for that proposition. Both of those cases concern the matter of indispensable parties, that is, without this particular party being a part of the litigation the court cannot accord complete relief. Here, complete relief can be granted without CBC Company being a party.

Equifax has not responded to the Notices to Admit, Plaintiffs assert that they should be deemed admitted, "paving the way for this Court to enter summary judgment against them, *sua sponte*." Pls.' Mem. of Law at p. 1.

During a telephone Conference held on November 27, 2013, Equifax advised the Court that it had entered into a stipulation of settlement with Plaintiffs, which Plaintiffs deny. Equifax further advised the Court that it intended to enforce the stipulated settlement. Based upon the parties' disagreement over the existence of a settlement, the Court directed Equifax to file a motion to the attention of Judge McAvoy. Dkt. No. 54, Order, dated Nov. 27, 2013, at p. 2. Indeed, Equifax filed a Motion to Dismiss and Enforce Settlement, Dkt. No. 56, Equifax Mot. to Dismiss, dated Dec. 27, 2013, and that Motion was fully briefed, Dkt. Nos. 60, Pls.' Opp'n, dated Jan. 9, 2014; 62, Equifax's Reply, dated Jan. 30, 2014. On April 14, 2014, Judge McAvoy issued a Decision and Order denying, *inter alia*, Equifax's Motion to Dismiss. Dkt. No. 73.

Until Judge McAvoy issued a decision on the Motion to Dismiss, this Court was prepared to find that it would be premature to address this aspect of Plaintiffs' Motion to Compel while there is a dispositive motion pending. The Court's greatest concern was that if Equifax's pending Motion to Dismiss and Enforce Settlement was granted, such decision would invariably and inextricably render any ruling that this Court

would make relative to responding to Plaintiffs' Discovery Demands and Notices to Admit moot. Prudence then would have compelled this Court to reserve on this Motion to Compel until such time Judge McAvoy has rendered a decision on the Motion to Dismiss.

However, Judge McAvoy has dismissed Equifax's Motion, Dkt. No. 73, and, at this juncture, Equifax remains a Defendant. Therefore, Equifax must account for its responses or lack of responses to Plaintiffs' Requests for Admission. Accordingly, Equifax is directed to provide to this Court its Responses to Plaintiffs' Request or, if such responses do not exist, serve said responses upon Plaintiffs within five days of the filing date of this Memorandum-Decision and Order.[4]

### III. Motion to Compel Discovery from DMG

Plaintiffs assert that DMG refuses to fully comply with their Demands, and, "particularly [has] falsely alleged that they played no role whatsoever . . . concerning

---

[4] On another point, contrary to Plaintiffs' suggestion, Federal Rule of Civil Procedure 56 does not grant a court authority to enter a summary judgment *sua sponte*. A court does not initiate such a process on its own. In order for summary judgment to be considered, a party must file a motion to that effect and must establish that there are no genuine dispute as to the material facts. The Court would then review that motion and the record to determine whether said motion would be granted or denied.

Additionally, Plaintiffs addressed its Notices to Admit to CRAs, which they defined as credit reporting agencies collectively, and DMG. Although the Court appreciates that the Plaintiffs are *pro se* and were attempting to pursue shortcuts, this is still improper form. The Notices to Admit should be addressed to each individual Defendant so that there is no confusion as to what is expected of each. For an example, it is unclear if Experian was directed to respond or whether it served responses thereto.

the subject auto lease[.]" They find DMG's replies to be "disingenuous." Pls.' Mem. of Law at p. 2. Attached to Plaintiffs' Memorandum of Law are DMG's Responses to Plaintiffs' Combined Interrogatories, Production and Request for Admissions. Dkt. No. 59-2, unnumbered Ex.

DMG's Opposition notes, *inter alia*, that (1) Plaintiffs failed to confer with it before filing this Motion; (2) it complied with Plaintiffs' first and second request for discovery; (3) it provided all of the requested documents; and (4) immediately after the November 26 conference, Attorney Deilly spoke with Jeffrey Gaul about the sufficiency of the responses to which Gaul stated that they were "acceptable in their current form." Dkt. No. 61, Deilly Affirm. at ¶¶ 5, 7, 8, & 9. Lastly, DMG asserts that "Plaintiffs' Motion appears to be intended for an improper purpose by forcing DMG to spend unnecessary time and expense in this litigation . . . [and may be] violative of Fed. R. Civ. P. 11(b)(1) and 28 U.S.C. § 1927[.]" *Id*. at ¶¶ 10-11.

The Court invested considerable time in reviewing both Plaintiffs' Demands and DMG's Responses thereto. On a whole, DMG has adequately responded to each Interrogatory and Request to Admit, although the Court recognizes they are not to Plaintiffs' satisfaction. The Responses to the Interrogatories refer to documents being attached but none was provided to the Court, and none need not. Without Plaintiffs specifically identifying how these Responses and document productions are

inadequate, the Court is hamstrung in finding that they are.

Claiming that DMG's Responses are false and disingenuous is a conclusion this Court cannot make because it requires a credibility judgment. Credibility determination are not made generally with regard to discovery responses, unless the movant can **prove** the falsity he claims. *Abascal v. Fleckenstein*, 2010 WL 384839, at *10 (W.D.N.Y. Sept. 29, 2010) (noting that the court is unable to determine whether defendants' responses were indeed evasive or false). Without proof being proffered of false answers, the only evaluation a court can make is whether the response is adequate, or materially incomplete, or possibly evasive. Plaintiffs have failed to explain why DMG's Responses are false, misleading, or disingenuous. Disagreement with a response does not establish its falsehood. Here, the Court finds that DMG's responses are adequate. DMG has made an effort to make the appropriate inquiry in order to obtain the information being sought. *See Billups v. West*, 1997 WL 100798 (S.D.N.Y. Mar. 6, 1997).

Likewise, without more, the Court cannot say that Plaintiffs' Motion violates Rule 11 or is intended to be vexatious. But both parties should understand that they should not file any motion or pleading that may harass or cause unnecessary delay or needlessly increase the cost of litigation. FED. R. CIV. P. 11(b)(1). The parties should be guided accordingly.

## IV. Guidance on Summary Judgment

Plaintiffs make an unusual appeal to the Court. Plaintiffs request that this Court give them explicit guidance on how to properly defend themselves against a summary judgment motion. Pls.' Mem. of Law at pp. 3-4. As the Court may have explained during a telephone conference, it cannot give any advice as to how to proceed, and in this case, how to defend against a motion for summary judgment. If the Court was to provide such advice, it would be easily construed that the Court favors one party over another. The Court must be a detached arbiter of the issues being presented and not step over that bright line regarding advising a party as to what it should or should not do. Such would be a breach of this Court's prudential responsibilities.

Plaintiffs should turn to the Federal Rules of Civil Procedure and this District's Local Rules of Practice. Federal Rule of Civil Procedure 56 and Local Rule 7.1 clearly state how the motion should be presented and defended. A motion for summary judgment is based upon the entire record and not just the complaint or prior submissions. It is the record attached to the motion for summary judgment or in opposition thereto that is reviewed, not prior submissions. Otherwise, a reliance solely upon prior submissions as pre-determinative of a motion for summary judgement, as Plaintiffs' urge, would be unconventional and improper. Accordingly,

*-12-*

the Court denies this Motion.[5]

## V. Plaintiffs' Access to Electronic Court Filing System

Plaintiffs previously sought permission to file their papers electronically. That application was denied. Dkt. No. 54, Order, dated Nov. 27, 2013. That decision was based principally upon Jeffrey Gaul's conduct in the case entitled *Global One v. Gaul*, 5:01-cv-254. Based upon correspondence and telephone calls to the Honorable Donald Walter, Senior Untied States District Judge, a Text Order was issued on November 7, 2006, directing "that any future communication by Defendant Gaul to either the Court or to the Clerk's Office shall be in writing only." Civ. Case No. 5:01-CV-254. A subsequent minute entry indicated that "[a]ny communication with Court is to be in writing only. Any communications with Clerk's Off[ice] is to be in writing or in person. Proceedings were taped and [the] tape is with the Marshal's Off[ice]." Consequently, based upon "specific threats of bodily harm made by Jeffery Gaul," Judge Walters recused himself from that matter. Civ. Case No. 5:01-CV-254, Dkt.

---

[5] Plaintiffs also seek explicit instructions on amending the Complaint. Hereinabove is a full expose of the law regarding a motion to amend. *See supra* Part I. Plaintiffs should be guided accordingly. Furthermore, incorporation by reference of all of Plaintiffs' filings within their Complaint, as Plaintiffs request, is not a proper nor prudent pleading. Even if such a practice was permitted, their Complaint, even with those incorporations, would not constitute evidence. Documents, testimonies of witnesses, and the like constitute the type of evidence to be a part of a motion for summary judgment or to be presented at trial.

In terms of discovery, the Court provides some guidance as to how to produce documents and/or respond to interrogatories and requests for admissions. *See infra* Parts VI.A-C.

No. 74.

Gaul provides a version of events which is not accurate. The Judge's and the Clerk Office's direction that Gaul's filings be in writing had nothing to do with any complaint he may have filed against Judge Walters. Nor did this Court suggest, as Gaul asserts, that he was being punished for filing the complaint against Judge Walters. Furthermore, that docket does not indicate any judicial review committee or that the "Northern District has wisely decided since to disallow [Judge Walter] further court cases." See Pls.' Mem. of Law at p. 5. Such statements by Gaul lacks verisimilitude.

Further, the Court based its decision in this case on Gaul's correspondence to some of the attorneys in this present action. Equifax had asked this Court to issue an order directing Plaintiffs to cease and desist in communicating in any fashion or form with the managing partner of the law firm. Those communications were rather contumacious. The Attorney's application was withdrawn after Plaintiffs agreed to only communicate with the attorneys assigned to this case. Nonetheless, the Court was compelled to state that based upon the tone of the communications, "the Court strongly urges that the parties refrain from *ad hominem* attacks, vituperations, unpleasant street colloquialisms, and strident adjectives, adverbs, and verbs." Dkt. No. 54, Order, dated Nov. 27, 2013, at p. 3.

Rarely has the Court granted permission to file electronically to any *pro se* party. And, based upon Gaul's past behavior, the Court is reluctant to do so now. However, after considerable deliberation, the Court will relent and allow Gaul access to the electronic court filing system but with this *caveat*: He must abide by all of the rules set for electronic filing. If the Court determines that any of Gaul's pleadings, motions, opposition to motions, submissions of any kind, correspondence, and communications are inappropriate as to content or prose, Gaul's privileges will be immediately revoked and he will have to file his papers the traditional way. With these instructions ensconced with this Memorandum-Decision and Order, the Clerk of the Court shall accept Gaul's application for the District's electronic court filing.

## VI. DMG's Demands Served Upon Plaintiffs

On or about October 29, 2013, DMG served Demands for Interrogatories, Production of Documents, and Requests for Admission. Dkt. No. 72-1, Exs. A-C, DMG's Demands. On or about December 2, 2013, Plaintiffs responded thereto. *Id*., Ex. E. DMG had previously claimed that Plaintiffs' Responses were deficient. Recently, DMG claims that Plaintiffs' improperly redacted information from certain documents and failed to provide various credit bureau credit reports. Dkt. No. 72, DMG Lt., dated Apr. 11, 2014.

A. Requests For Admissions

FED. R. CIV. P. 36(a) states straightforwardly with rather steep specificity the rules regarding Requests for Admissions. In pertinent part, it reads:

> A party may serve upon any other party a written request to admit, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b)(1) relating to[] facts, the application of the law to fact, or opinions about either [] and the genuineness of any described documents . . . Each matter must be separately stated . . . . A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney . . . . If the matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest . The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny. . . . The grounds for objecting to request must be stated.

The responding party is expected to admit unless they disagree with the request, then he or she must deny or object. That "denial must be forthright, specific and unconditional." *Booth Oil Site Admin. Group v. Safety-Kleen Corp.*, 194 F.R.D. 76, 80 (W.D.N.Y. 2000); MOORE'S FEDERAL PRACTICE ¶ 36.11[5][b]. The intended impact of an admission is to conclusively establish the admitted fact unless the court permits a withdrawal or amendment of the admission. FED. R. CIV. P. 36(b). There will be times, however, when the answer cannot be a succinct yes or no, and a qualification of the response is indeed necessary. Under these circumstances, the

answering party is obligated to specify so much of its answer as true and qualify or deny the remainder of the request. MOORE'S FEDERAL PRACTICE ¶ 36.11[5][a]. "Generally, qualification is permitted if the statement, although containing some truth, . . . standing alone out of context of the whole truth . . . convey[s] unwarranted unfair references." *Deiderich v. Dep't of Army*, 132 F.R.D. 614, 619 (S.D.N.Y. 1990). These qualifications are to provide clarity and lucidity to the genuineness of the issue and not to obfuscate, frustrate, or compound the references. MOORE'S FEDERAL PRACTICE ¶ 36.10[6]. As mentioned above, there is an alternative to denying the requested admission. The party is permitted to object to the request or a particular aspect of the request. This requires the responding party to "set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter." *Herrera v. Scully*, 143 F.R.D. 545, 548 (S.D.N.Y. 1992). If the objection is only to a portion of the request, the responding party is required to unambiguously answer that portion of the request to which the objection does not apply. *Id.* at 548; MOORE'S FEDERAL PRACTICE ¶ 36.11[5][c]. An unjustifiable objection may be subject to sanctions. FED. R. CIV. P. 36(a)(6) & 37(a)(5).

Additionally, to the extent that the answering party is incapable of providing a response with the information reasonably available to it, he or she must so apprise the requesting party. But this answer encompasses more than a mere elocution. Rule 36

requires the responding party to make a reasonable inquiry, a reasonable effort to secure information that is readily obtainable from persons and documents within the responding party's relative control, and to state fully those efforts. *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co. Inc.,*, 174 F.R.D. 38, 43 (S.D.N.Y. 1997); MOORE'S FEDERAL PRACTICE ¶ 36.11[5][d]. Such reasonable inquiry includes an investigation and inquiry of employees, agents, and others, "who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response." *T. Rowe Price*, 174 F.R.D. at 43-44 (citations omitted). The inquiry may require venturing beyond the parties to the litigation and include, under certain limited circumstances, non-parties, but surely not strangers. *Id*. at 44; *Diederich*, 132 F.R.D. at 620. The operative words then are "reasonable" and "due diligence."

There are several consequences for failing to properly answer. If the Court determines an answer does not comply with Rule 36, it may direct that the matter be deemed admitted or that an amended answer be served. FED. R. CIV. P. 36(a)(6). Or, if warranted, the Court may order that the final disposition of the request be preserved to a pretrial conference or a specified time before trial. *Id*. Lastly, Federal Rule 37(a)(5) applies to an award of expenses. *See also Herrera*, 143 F.R.D. 548.

Weighing this lengthy discussion of Federal Rule 36 and the related legal

precedents, the Court embarked upon a review of the Plaintiffs' Responses to DMG's Request for Admissions.

Plaintiffs' Responses are not models of clarity but may be adequate under Rule 36. Each Response repeats the same general objections that give the appearance of obfuscation. For the most part those objections are not applicable nor specific as required by Rule 36.[6] Yet peering closely at the Responses, they are either direct denials or admissions, or an abbreviated explanation thereto. For the most part, Plaintiffs' Responses pass muster.

## B. DMG's Demand to Produce

Rule 34 is rather clear with regard to production of documents:

> Any party may serve on any other party a request to produce and permit the party making the request, or its representative to inspect, copy, test, or sample . . . any designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, . . . or any designated tangible things[.]

A party to whom the request is directed must respond in writing as to each item requested, but can make objections.

Plaintiffs employ a similar practice as they had done with Responses to Requests for Admissions. Each Response repeats the same objections whether

---

[6] For Plaintiffs' edification, and despite this repetitive objection, the Requests were not overbroad, burdensome, vague, ambiguous, and incomprehensible.

applicable or not.[7]  Apparently there was some limited production by the Plaintiffs but they stated repeatedly that they "cannot provide any documents, however, our efforts to locate any shall continue."   Federal Rule of Civil Procedure 26(e) permits supplementation of disclosures but it must be done in a timely matter especially when a party learns that in some material respect the disclosure or response is incomplete or incorrect.  A party cannot reserve or postpone until the last moment to spring an appropriate response upon the demanding party.  Although it is hard to fathom that Plaintiffs do not have more documents than what they disclosed, it may be true.  As tenaciously as Plaintiffs have been litigating this matter, it is difficult to accept that they only have a handful of relevant documents.  There is a caveat to this observation and the Court cautions that  Plaintiffs should not hide nor limit production by relying upon this blanket statement that they will provide more when efforts to locate them prove fruitful.  If these documents are not provided in a timely manner, as required by Rule 26(e), Plaintiffs may find that they will be precluded from presenting these documents at trial.

Nonetheless, Plaintiffs provided some documents but redacted account information from them. The redactions are mistaken. By bringing this lawsuit,

---

[7]  Again, Plaintiffs repeatedly stated that the Demands were overbroad, burdensome, not calculated to lead to admissible evidence, unintelligible, ambiguous, and incomprehensive.  The Demands were straightforward and for the most part not objectionable.

Plaintiffs have placed all of their credit information into issue. Accordingly, Plaintiffs shall provide those documents unredacted.

DMG claims that Plaintiffs withheld specific credit reports claiming them to be confidential. If Plaintiffs possesses these specific credit reports, they are required to disclose them immediately.

Interrogatory 11 seeks documents regarding communications between Plaintiffs and DMG. Plaintiffs state that they continue to prepare said documents and will provide them as soon as they are prepared. Demands for production usually seek documents in existence and do not require that a specific document be drafted. Here, if there are no documents regarding communications between these parties, Plaintiffs should state so. There does not seem to be a need to draft a document to respond to this Interrogatory. Plaintiffs should respond to this Interrogatory immediately.

In responding to Interrogatory 12, Plaintiffs state that they would make their notebooks available for inspection. Plaintiffs could have easily produced copies of the notebooks. Nonetheless, Plaintiffs shall make available the notebooks as soon as possible. DMG has the right to make a copy of the notebooks. Otherwise, the Responses to Document Production appear to be adequate.

### C. DMG's Demand for Interrogatories

As a general proposition, interrogatories are controlled by FED. R. CIV. P. 33

and 26. Interrogatories, like other discovery devices, may inquire into any discoverable matter, including facts and contentions. There are many purposes for Interrogatories but the general aims are to expeditiously narrow the scope of litigation, reduce the element of surprise, serve as admission for trial,[8] and in a significant matter avoid unnecessary discovery and minimize the expense. JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 33.03 (3d ed. 2009). Each interrogatory, whether seeking facts or contentions, is to be answered "separately and fully." These interrogatories may relate to any matter that can be inquired into under Rule 26(b)(1). FED. R. CIV. P. 33(a)(2); MOORE'S FEDERAL PRACTICE § 33.02.

To be clear on this point, Rule 33 lays bare that all reasons for the objection must be separately stated with "specificity" as to each interrogatory propounded to the answering party, and to the degree that an interrogatory or portion thereof is not objectionable, the responding party must answer. MOORE'S FEDERAL PRACTICE § 33.100. Any reliance upon general, nonspecific blanket objections is of little avail. By trying to cover all bases and regurgitate general objections, such as "overbroad and unduly burdensome," "vague and ambiguous," "work product" and the like before answering the interrogatories or as a preface to each answer, serve no utility

---

[8] "An [interrogatory] answer . . . may be used to the extent allowed by the Federal Rules of Evidence." FED. R. CIV. P. 33(c).

whatsoever and unless these and other objections are raised with considerable detail to a specific propounded interrogatory they have no force or effect. *Id*. at § 33.171.

Answers to an interrogatory must be completed within itself and, it should be in a form that may be used at trial. *Int'l Mining Co., Inc. v. Allen & Co., Inc.*, 567 F. Supp. 777, 787 (S.D.N.Y. 1983). The responding party must provide the best answer they can based upon the most current information within their possession. FED. R. CIV. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."); *Doe v. Mercy Health Corp*., 1993 WL 377064, at *4 (E.Pa. Sept. 15, 1993); MOORE'S FEDERAL PRACTICE § 33.101. And, as new information comes into their possession, the responding party has a continuing duty to supplement their responses. FED. R. CIV. P. 26(e)(1); MOORE'S FEDERAL PRACTICE § 33.106.

In order for an answer to be adequate it must be a complete response to the interrogatory, specific as possible and not evasive. *In re Savitt/Adler Litig*., 176 F.R.D. 44, 49 (N.D.N.Y. 1997). The answer is supposed to provide more than an idea of what the case or defense is all about. Thus, a boilerplate answer is no better than no response. The responding party must make an effort to answer with the information "reasonably available to it [and] . . . is not excused from making its disclosure because it has not fully investigated the case . . ." FED. R. CIV. P. 26(a)(1)(E).

Setting aside Plaintiffs' general objection, they reiterate in each of their responses, "Plaintiffs intend to add to this response as they obtain the related facts." In fact, Plaintiffs provide no response other than this *carte blanche* statement. As the recitation of the law indicates, Plaintiffs must provide all of the information available at this time and should not make an excuse that they need to fully investigate. However, the Court accepts that some of the Interrogatories cannot be answered until more material information is obtained. DMG needs to have an idea as to Plaintiffs' claims and how those claims are supported. Plaintiffs cannot resort to a proposition of intending to add information if they already possess some of this information. For example, Plaintiffs were asked to provide the name of the person at DMG who furnished information to them. Plaintiffs gave no response. Certainly, Plaintiffs can provide that name. When DMG asked for witnesses' names, Plaintiffs would give one name and state "likely others." Plaintiffs should provide the names of currently known witnesses rather than remark, likely others. DMG asked for the names of witnesses who may testify on behalf of Plaintiffs and a narrative of their testimony. In responding, Plaintiffs did not give an answer to this Interrogatory, rather, they state that they would be testifying to damages. This does not fulfill the Interrogatory.

The Court understands that Plaintiffs may not have all of the requested information at their fingertips, however, they must make a greater effort to respond

to DMG's Interrogatories now rather than wait until it is too late. Intending to add to their responses as to each of these Interrogatories may not be sufficient in all instances. Plaintiffs shall revisit their answers and provide more current and material replies.

Discovery comes to an end in approximately sixty days. The rapidity of such discovery deadline should compel Plaintiffs to provide the needed responses and documents as soon as possible. To the extent that Plaintiffs can fairly provide updated answers, they should do so within the next thirty days.

Lastly, Jeffrey Gaul signed the Responses on behalf of both Plaintiffs. This is improper. Both Plaintiffs, including Paula Gaul, must sign the appropriate Responses.[9]

Based upon all of the foregoing, it is hereby

**ORDERED**, that Plaintiffs' Omnibus Motion, Dkt. No. 59, is **granted in part and denied in part**: (a) Plaintiffs' Motion to join CBC Company is denied without prejudice; (b) Plaintiffs' Motion to Compel Equifax to respond to Requests for Admissions is granted in part. To the extent that Equifax has not responded to the

---

[9] Judge McAvoy noted in the April 14, 2014 Decision and Order that Plaintiffs asserted that "Plaintiff Paula Gaul never authorized her husband, Plaintiff Jeffrey Gaul, to make an agreement that failed to include money damages." Dkt. No. 73 at p. 4. Obviously, Paula Gaul has an independent voice and position on these matters which conceivably could contradict or challenge those statements made by her husband, Jeffrey. To avoid any confusion, Paula Gaul must endorse the Plaintiffs' responses or submit her own responses with the proper certification.

Request for Admission, it must do so by April 22, 2014; (c) Plaintiffs' Motion for instruction on how to defend against a motion for summary judgment is denied; (d) Plaintiffs' Motion to Compel DMG to respond to their Demands is denied; and (e) Plaintiffs' Request access to electronic filing is granted; and its is further

       **ORDERED**, that DMG's Motion to Compel is **granted** to the extent that Plaintiffs must supplement their responses to Interrogatories and produce any further documentation they may have, consistent with this Memorandum-Decision and Order. by May 16, 2014. Further, Paula Gaul must independently sign all of the responses so that there are no questions that the responses reflect her position as well as Jeffrey Gaul.

       **IT IS SO ORDERED**.

April 16, 2014
Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge